## Martin Cheek v. The State.

1. Murder — Practice. — When the trial of a murder case results in a conviction for the second degree, the legal effect is an acquittal of the first degree ; and, therefore, as the indictment thus ceases to be for a capital felony, no special *venire* and no arraignment of the accused is necessary at his subsequent trial, and his peremptory challenges are but ten, instead of twenty, as at his first trial.

2. SELF-DEFENSE — CHARGE OF THE COURT. — Reasonable apprehension of danger to life, or of great bodily harm, excuses a homicide committed to avert such danger; and when, in a murder case, there was evidence tending to show cause for such apprehension, a charge to the jury was erroneous which limited the justification to the fear of death, ignoring the apprehension of great bodily harm.

APPEAL from the District Court of Robertson. Tried below before the Hon. W. D. WOOD.

The appellant and Horace Eaton, the deceased, were freedmen. On the morning of March 20, 1870, a quarrel arose between them, and resulted in the former shooting the latter twice with a pistol, and killing him instantly.

The witnesses for the State saw no act of the deceased indicating a purpose to shoot the defendant; but two or three witnesses for the defense testified that the deceased drew his pistol before the defendant shot him, and some of them testified that they heard the deceased, on the preceding evening, say that he would kill the defendant the next morning. The deceased, it appears, bore a grudge at the defendant for forestalling him in renting a dance-hall.

*Davis, Beall & Kemp*, for the appellant. The indictment under which defendant was tried was for a capital offense — murder in the first degree.

Under every indictment for a capital offense the accused is entitled to an arraignment. See Pasc. Dig., art. 2933.

The fact that appellant, at a former term, was acquitted of murder in the first degree, and convicted of murder in the second degree, does not obviate the necessity of arraignment, on another trial under the same indictment, since, from the language of the statute, the indictment characterizes the proceedings that must be had under it. The statute just cited uses the words "indictment for a capital offense." The rule of construction is, that every law upon the subject of crime shall be construed according to the plain import of

the language in which it is written.  See Pasc. Dig., art. 1611.

The courts will not go beyond this rule of construction. 8 Texas, 266.

The necessity for arraignment and plea under indictment for a capital offense (Pasc. Dig., art. 2930) is a direct command and positive requirement of the statute cited. Our statutes on the subject of arraignment are not merely formal rules of practice in proceedings under capital indictment, but this observance is requisite to the validity of a trial under them.  *Early* v. *The State*, 1 Texas Ct. App. 267.

When a defendant is indicted for a capital offense — murder in the first degree — but, on trial, acquitted of murder in the first degree and convicted of murder in the second degree, and the record shows want of pleas or arraignment, though in such case the jury, by verdict, have said the offense committed was not capital, yet, notwithstanding the capital feature has been taken away by verdict, the courts hold that the cause should be reversed. *Smith* v. *The State*, 1 Texas Ct. App. 408 ; *Pringle* v. *The State*, 2 Texas Ct. App. 300 ; *Avara* v. *The State*, 2 Texas Ct. App. 420.

If the court should hold that in this case arraignment was necessary, but (as, Mr. Wharton says, in some cases it may be) waived, will it be presumed, as intimated in the case of *Plasters* v. *The State*, 1 Texas Ct. App. 685, because the record in this case shows that defendant pleaded " not guilty," that he waived the right of arraignment?  We suggest that, in the case of Plasters, the record was silent on the subject of arraignment ; in the present case no arraignment was had, by the order and judgment of the court. The record does not show that defendant excepted specially and formally to this action, but we apprehend that an error apparent on the record may be revised, though not presented by bill of exceptions.  3 Texas, 487.

*George McCormick*, Assistant Attorney-General, for the State.

ECTOR, P. J. The defendant, Martin Cheek, was indicted by the grand jury of Robertson County, on April 25, 1870, for the murder of one Horace Eaton, in that county, on March 20, 1870. There was but one count in the indictment. He was tried on June 14, 1877, and convicted of murder in the second degree. A new trial was granted him, and at the next term of court, and on the ninth day of the court, he was again put on trial, and was convicted of murder in the second degree, and his punishment assessed at five years in the penitentiary. He made a motion for new trial, which was overruled by the court ; to which ruling he excepted, and gave notice of appeal to this court.

The first error assigned is " that the court erred in allowing the defendant to be put on trial without an arraignment, as provided by law, as of record is manifest (Trans., p. 5), whereby the defendant was denied the benefit of a special *venire* to select his jury from, and was limited in his challenges to ten, instead of twenty." On the first trial the defendant was regularly arraigned, and pleaded not guilty. On the second trial he pleaded not guilty.

The Code of Criminal Procedure provides that there shall be no arraignment of a defendant, except upon an indictment for a capital offense. Pasc. Dig., art. 2933.

In capital cases the defendant shall be entitled to twenty peremptory challenges, and the State to ten, and where there are more defendants than one on trial, each defendant shall be entitled to twelve peremptory challenges, and the State to six, for each defendant. *Ibid.*, art. 3037.

In prosecutions for felonies not capital, the defendant shall be entitled to ten peremptory challenges, and the State to five ; and where more defendants than one are tried together, each defendant shall be entitled to six peremptory

challenges, and the State to three, for each defendant.
*Ibid.*, art. 3038.

Our Criminal Code provides that "if the jury find any
person guilty of murder, they shall also find, by their ver-
dict, whether it is murder of the first or second degree."
Both on principle and the authority of adjudged cases, it is
held that where one is indicted for murder, and is tried
and convicted of murder in the second degree, and a new
trial is granted, he cannot be legally tried upon the charge
of murder in the first degree. *Jones & Jones* v. *The State,*
13 Texas, 168; *Lopez* v. *The State,* 2 Texas Ct. App.
204; *The State* v. *Ross,* 29 Mo. 32; *Clem* v. *The State,*
42 Ind. 420; *Bremon* v. *The People,* 15 Ill. 571; *Hart* v.
*The State,* 25 Miss. 378; 4 Cal. 376; Bishop's Cr. Law,
sec. 850; also, 1 Bishop's Cr. Proc., sec. 837.

Upon an examination of this question, the reader will find
that the authorities are not uniform. We believe that the
legal effect of the verdict of the jury in the first trial was
to acquit the defendant of murder of the first degree; that
this was no longer a capital felony charged against him, and
that, in any subsequent trial, he was only entitled to ten
peremptory challenges.

The fifth assignment of error is that "the court erred in
the fifth paragraph of the charge, wherein the jury were
charged that the killing of a man is also justifiable in law
when it occurs in the protection of the person against any
unlawful and violent attack, of such a nature and character
as to produce in the mind of the person killing a reasonable
apprehension or fear of death, or great bodily injury that
will likely produce death." The counsel for the State insists
that the whole charge of the court should be taken and con-
strued together, and that it is, substantially, the law as laid
down by the Code. The same fault is manifest in the ninth
section of the charge of the court.

The seventh paragraph of the charge (although the word

"defendant" is used in one place instead of "deceased," and this, perhaps, is the fault of the clerk in copying) may be said to correctly state the law.    But it is succeeded in the ninth paragraph by the following instruction:    "If, from all the evidence in this case, the jury shall believe that at the time of the difficulty, and before the defendant drew his pistol, deceased did some act, at the time of the killing, from which defendant might reasonably infer that his life was in danger, or that he was in danger of great bodily injury that would likely produce death," etc.

The charge of the court, taken as a whole, gave undue prominence to the idea that, before the defendant could justify the killing, it must appear that defendant killed Eaton to save his own life; when he would have been justified in killing Eaton if he had just ground to fear that he would suffer great bodily injury at the hands of Eaton, under the restrictions as laid down in article 2228, Paschal's Digest.  A reasonable apprehension of great bodily harm, or that life is in danger, will excuse a party for using all the necessary force to protect his person or his life; and it is not necessary that there should be actual danger, provided he acted on a reasonable apprehension of danger.    *Munden* v. *The State*, 37 Texas, 353; *Horbach* v. *The State*, 43 Texas, 242; *Plasters* v. *The State*, 1 Texas Ct. App. 673; *Lester* v. *The State*, 3 Texas Ct. App. 17.

For this error in the charge of the court the judgment is reversed and the cause remanded.

*Reversed and remanded.*