The appellant in due time filed his motion for rehearing, alleging:
"(1) That the plaintiff believes that the court committed error to his prejudice in its first finding, because in it the record was incomplete and failed to include the instructions excepted to, we think that certiorari should have issued to bring up a more perfect record, and that plaintiff should not be the sufferer because of the laches of some one else. (2) Because the plaintiff believes that the court committed error to the prejudice of the plaintiff in error in its second finding, and submit that, while there is conflict in evidence, that conflict militates, we think, in favor of the plaintiff in error. We submit that the evidence for the government was not of the force sufficient to overcome the evidence for the state and the defense. Though the jury may not believe the defendant innocent, they should acquit if the evidence is sufficient to raise a reasonable doubt upon any of the material allegations in the indictment. 37 Tex. 353. We contend that the evidence for the state in this case is not of the most conclusive character, and that, when viewed with the evidence given by the defense is more than dubious, and clearly sufficient to interpose a reasonable doubt as to the defendant's guilt of the charge; and, the jury having overlooked that important fact, we think that it is the duty of the court of last resort to take cognizance of the fact, and to correct any error or omission that may appear from the record to militate against the defendant. (3) As to the third proposition or finding, we think the court erred in permitting the admission of the clothes of the deceased in evidence. We do not think, upon the whole case, that substantial justice has been attained, and believe that the consideration of the court's judgment of February 4, 1909, and a reversal of the judgment of the lower court, will promote the ends of justice, and result in an entirely different verdict and judgment." *Page 49 
The motion prays that the former judgment of this court may be set aside, and that the appellant be granted a new trial.
Taking the allegations of the motion in the order in which they are stated, we have:
First. The allegation that the record in this case is incomplete, for the reason that it does not include the instructions excepted to by appellant in the court below. The questions raised by this allegation were fully considered by this court; and it is the rule of this court that, when the record does not contain the instructions given to the jury, and when the facts in evidence constitute the offense against the statute charged in the indictment, this court will not consider an assignment that the verdict is contrary to law. The record discloses that a stipulation was entered into by counsel for the prosecution and defense in this case that only a portion of the instructions given to the jury, which are set up in paragraph 4 of the assignments of error in this case, should be incorporated in the appeal. Therefore the accused should not at this time be heard to complain that the record as filed in this court is incomplete because it does not include the instructions given. No steps having been taken by the accused to have the corrected record supplied, therefore he cannot for the first time assert his right to have the record corrected on his motion for rehearing; the accused being held to have waived such right. It is also a well-established rule of this court that it will not on appeal review errors not objected to at the trial, nor included in the grounds of a motion for a new trial in the trial court, but appearing for the first time in the motion for rehearing, unless such errors are fundamental or jurisdictional.
It is the duty of counsel to furnish briefs in support of their respective contentions, and thereby aid the court in arriving at proper conclusions. Counsel for appellant in this case have failed to file a brief in support of the motion for rehearing, and content themselves by citing a single authority in support of the motion, citing only the case of Munden v. State,37 Tex. 353; this *Page 50 
case being referred to merely as 37 Tex. 353. After going to some trouble to find this case, we fail to see wherein it supports any of the contentions of counsel for the accused in the case at bar. In this case the court was asked by the accused to give the jury the following instruction: "If they believed under the charge, that the defendant was not guilty, they should say so in their verdict." This charge the trial court refused to give. Judge Walker, speaking for the court in this case, and referring to said requested charge, says:
"Counsel for defendant assigned for error the refusal of the court to give to the jury the special charges asked by the defendant on the trial below. So far as these charges contained the law, they were substantially given in the general charge. The refusal of the court to give the last charge asked was right and proper, as it is not the law. A jury should have no belief as to the guilt or innocence of the defendant, except what they derive from the evidence applied to the law of the case. They are not required to believe the defendant not guilty in order to acquit. They may acquit upon any reasonable doubt of his guilt; and they may acquit without actually believing the defendant innocent, if the state has failed to satisfy them of his guilt. We do not think any injustice has been done the appellant in this case, and we therefore affirm the judgment."
In the absence of the record showing to the contrary, this court will presume that the jury were satisfied by the evidence of the guilt of the accused as expressed by their verdict. The case cited, therefore, does not afford the slightest reason for this court to set aside its former finding.
The second allegation of the motion for rehearing alleges insufficiency of the evidence. This is the only proposition argued and seriously contended for by counsel for appellant who appeared in support of the motion for rehearing. The earnestness of counsel's contention in connection with this allegation of the motion caused us to again fully read the evidence as disclosed by the record. The second reading and examination of the evidence confirms our conviction of the guilt of the accused. It is true there is conflict in the evidence, but there is sufficient evidence from *Page 51 
every viewpoint to clearly warrant the jury in finding the verdict of conviction. Much of the evidence offered by the accused is that of near relatives, close friends, and tenants of the accused or his father. Apparently there was but one disinterested witness who was in position to see what actually happened at the time of the homicide. His name is Jake Smith, who was a boarder at the home of the accused at the time of the killing, and was brought from Arizona to testify in this case. His version of what took place at the time of the killing is in conflict with the testimony of the accused and his brother-in-law, Tom Cantrell. The most significant part of Smith's testimony is in connection with what he first heard after the accused and deceased reached the home of the accused, which was between 3 and 4 o'clock in the morning. Smith says:
"The first I heard, Joe Boyd [the deceased] said, `Oh, you can't run anything over me [addressing the accused],' and bang went a shot, and Joe Boyd said, `Why, Sebe' and then bang! bang! bang! Q. When the first shot was fired what did Joe Boyd say? A. `Why, Sebe.' Q. And then how many other shots were fired? A. About three. Q. Were they fired in succession? A. Yes, one right after the other."
This, taken in connection with the testimony of the accused, in which he makes the statement: "And we got to our house, and got down and went in just as good friends as could be, I thought. Me and Joe always was good friends" — and does not show that the deceased was the aggressor.
The jury also probably took into consideration the facts, established by the testimony, to the effect that immediately after the killing no pistol was found either on or near the body of the deceased, but that about an hour after the killing a pistol was found near the body of the deceased, but that it was not the pistol with which he left Pierson's store to go to the home of the accused, but was the pistol carried by a man named Dick Watson, who was with the accused and the deceased about the time the homicide occurred. The pistol found near the body of the deceased had but one load and an empty shell in it. And the jury *Page 52 
also probably took into consideration the testimony showing that there had been a controversy, just a few days before the homicide, between the deceased and the father of the accused, growing out of the killing by the deceased of some hogs or shoats belonging to the father of the accused; and also that the accused immediately fled from the country leaving his family, and was not apprehended for more than a year after the homicide occurred, which conduct tended strongly to show the guilt of the accused. The evidence also establishes the fact that the accused, Dick Watson, and Tom Cantrell engaged in a drunken spree, commencing about 8 o'clock at night and lasting until the homicide occurred; it being undisputed that the accused and his brother-in-law, Tom Cantrell, Dick Watson, and the deceased had been drinking freely during the time just stated. Taking all the testimony and the circumstances into consideration, the guilt of the accused is established beyond a reasonable doubt. It is a well-established rule of this court that, where there is evidence to support the verdict, and the record discloses that the accused had a fair and impartial trial by a fair and impartial jury and trial judge, such verdict will not be reversed. The jury, having heard all the evidence, saw the witnesses upon the witness stand, had an opportunity of observing their intelligence or want of intelligence, their candor, or want of candor, their interest, or want of interest, in the case, their ability of knowing the facts to which they testified, and were much better able to correctly determine the evidence than this court; and, the determination of the facts being purely within the province of the jury, a verdict so rendered is accepted by this court as settling the questions of fact.
The third ground relied upon in the motion for rehearing relates to the introduction in evidence by the prosecution of the clothing worn by the deceased at the time of the homicide, showing the bullet hole made by the shots which killed the deceased. This question having been again fully considered by this court, we can see no reason whatever for changing our views upon this proposition. This court is convinced that no prejudicial error resulted *Page 53 
from the introduction of said evidence, and that the authorities, cited and relied upon in the opinion of this court, are approved, and fully sustain the action of this court.
Therefore, having carefully considered the entire case and failing to find any ground upon which we would be justified in changing our original opinion, the motion for a rehearing is denied.